UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN BROWN,

    Plaintiff,

v.                                                  Case No. 8:24-cv-2006-LSG

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**ORDER**

The plaintiff Kevin Brown seeks to overturn the denial of his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Docs. 1, 13. As explained below, I affirm the decision of the Commissioner because substantial evidence supports the ALJ's findings and because Brown demonstrates no prejudice in the ALJ's development of the record warranting remand.

    **I.**    **Procedural background**

On April 27, 2021, Brown applied for SSI and alleged that his disability began on November 30, 2020. Tr. 10, 124. The Commissioner denied his claim both initially and on reconsideration. Tr. 10. An administrative hearing occurred, during which Brown appeared and testified. Tr. 10. The decision after the hearing was unfavorable. Tr. 7. Brown sought review by the Appeals Council, which denied his

request. Tr. 1. Brown timely filed a complaint in this Court, Doc. 1, and the case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual background and the ALJ's decision

Brown was forty years old when he applied for SSI in 2021. Tr. 17. In his disability report, Brown describes his impairments as including hidradenitis suppurativa,[1] high blood pressure, and pain from boils. Tr. 152. The ALJ found that Brown also suffers from major depressive disorder, angina pectoris, and obesity. Tr. 12. Brown has at least a high school education and has a history of working as a psychiatric aide, a truss assembler, and a fast-food cook. Tr. 17. Brown has not engaged in substantial, gainful activity since April 27, 2021. Tr. 12.

The ALJ found that Brown's severe impairments include hidradenitis suppurativa and major depressive disorder. Tr. 12. However, the ALJ found that neither of these impairments "meets or medically equals" the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13. The ALJ then found that Brown has a residual functional capacity to perform "a full range of work at all exertional levels" but he "can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, and crawl; and frequently stoop, kneel, and crouch. He must avoid concentrated exposure to extreme heat and workplace hazards, such as moving mechanical parts and unprotected heights." Tr. 15.

---

[1] Known as "acne inversa," this is a condition that causes small, painful lumps under the skin, particularly in areas where the skin rubs together. *Hidradenitis suppurativa*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (last visited Aug. 5, 2025).

In formulating this residual functional capacity, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence[.]" Tr. 15. The ALJ found that Brown's statements about "the intensity, persistence, and limiting effects" of his symptoms were "not entirely consistent with the medical evidence[.]" Tr. 16–17. A vocational expert testified that, although Brown could not perform his past relevant work, he could perform other jobs in the national economy, including as a "marker," a "router," and a "photocopy operator." Tr. 17–18. Therefore, considering the claimant's age, education, work experience, and residual functional capacity, as well as the testimony of the vocational expert, the ALJ found Brown not disabled. Tr. 18.

### III.   Standard of review

Entitlement to SSDI benefits requires a "disability," which means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" likely to result in death, lasting for at least twelve months, or expected to last more than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" means a condition resulting from "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Social Security Administration ("SSA") regulations establish a five-step "sequential evaluation process" to determine whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ must determine whether the claimant (1) is

engaged in "substantially gainful activity," (2) has a severe impairment, (3) has a severe impairment that "meets or equals" the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) can perform the claimant's past relevant work, and (5) can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant may obtain benefits only if unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987).

    A decision denying SSDI benefits should be upheld if "the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner's factual findings receive deference, but the legal conclusions receive "close scrutiny." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

    "When deciding whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner." *Hill v. Comm'r of Soc. Sec.*, No. 2:24-CV-64-KCD, 2024 WL 4719493, at *1 (M.D. Fla. Nov. 8, 2024) (citing *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)). A reviewing court may not find facts, weigh evidence, or substitute its judgment for the ALJ's, even if the evidence preponderates

4

against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the Commissioner's failing either to apply the law correctly or to provide sufficient legal analysis mandates reversal. *Keeton*, 21 F.3d at 1066. Thus, the scope of review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standard. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV. Analysis

Brown argues on appeal that the ALJ erred (1) by omitting from Brown's residual functional capacity mental limitations stemming from his "severe" impairment of a major depressive disorder and (2) by failing to "fairly and fully" develop the administrative record on Brown's mental impairments. Doc. 13 at 6. On the first issue, the Commissioner asserts that this omission is merely a "drafting error." Doc. 16 at 7. In other words, the Commissioner argues that, even if the ALJ should have included mental limits in Brown's residual functional capacity, the record demonstrates that Brown could still perform the jobs identified by the vocational expert. *Id.* On the second issue, the Commissioner argues that the record was sufficient for the ALJ to determine whether Brown was disabled. Doc. 16 at 13–15.

### a. Substantial evidence supports the ALJ's findings at steps two and three, and Brown otherwise demonstrates no harmful error.

The second step of the sequential evaluation process requires the ALJ to determine whether a claimant's impairment is "severe." 20 C.F.R. § 416.920(a)(ii). A severe impairment "significantly limits [a person's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). An impairment is not severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); 20 C.F.R. § 416.920a(d)(1). Additionally, unless the impairment is expected to result in death, the impairment must "have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 416.909, 416.920(a)(ii). Once the ALJ finds a severe impairment, the ALJ considers whether the impairment "meets or equals" the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Here, the ALJ found that Brown's major depressive disorder was a severe impairment. Tr. 12. However, the ALJ determined that this condition did not "meet or medically equal" a listed impairment. Tr. 13. SSA regulations require the use of a "special technique" known as the Psychiatric Review Technique ("PRT") when evaluating a mental impairment. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 416.920a. This involves assessing how a person's mental impairment impacts (1) understanding, remembering, or applying information;

(2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The SSA employs a five-point scale to rate a person's impairment in each area, which scale includes "none," "mild," "moderate," "marked," and "extreme." 20 C.F.R. § 416.920a(c)(4). An ALJ must incorporate the results of the PRT into his assessment of a person's residual functional capacity.[2] 20 C.F.R. § 416.920a(e)(4); *Moore*, 405 F.3d at 1213–14.

    The ALJ found that Brown had "no limitation" in understanding, remembering, or applying information and only a "mild" limitation in the other functional areas. Tr. 13–14. Typically, this finding results in a conclusion that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 416.920a(d)(1). Brown argues that this renders the ALJ's opinion "internally inconsistent," Doc. 13 at 9, because the ALJ found that Brown's depressive disorder was severe but caused only mild functional limits. But Brown cites nothing prohibiting such findings, which appear consistent with the medical evidence. That evidence shows that Brown's symptoms, although severe, substantially improved with less than a month of treatment.

    When formulating Brown's residual function capacity, the ALJ included no limits based on Brown's mental impairment. As the ALJ explained, Brown "did not

---

[2] A person's "residual function capacity" is "the most that [the person] can still do despite [the person's] limitations." 20 C.F.R. § 416.945(a)(1).

initiate mental health treatment until 2023 and he improved significantly after just one month of treatment." Tr. 17. Between April 2021 (the day of the alleged disability onset) and June 2023, Brown's mental status examinations were normal, and he received no treatment for a mental condition. Tr. 16. Brown's first treatment for depression began in June 2023 when he reported rarely leaving the home, decreased interest in activities, struggling with interpersonal relationships, poor sleep and appetite, and occasional suicidal ideation. Tr. 16. He was sullen, sad, and tearful, with impaired insight and judgment. Tr. 16. Brown's provider diagnosed him with major depressive disorder and prescribed medication. Tr. 16. When Brown returned for treatment in July, the provider noted that Brown was smiling and happy. Tr. 16, 462. He reported feeling better; having improved sleep, mood, and interactions with his mother; and having plans to leave the house. Tr. 16, 462. Although he still had impaired judgment and abnormal remote memory, his judgment was improved, and his mental status examination was normal. Tr. 16, 463.

     During the hearing, the ALJ received testimony from a vocational expert, who identified jobs in the national economy that a hypothetical individual could perform. Tr. 56. This individual could not climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; could occasionally balance and crawl; could frequently stoop, kneel, and crouch; and would need to avoid extreme heat and workplace hazards such as mechanical moving parts and unprotected heights. Tr. 56. The vocational expert testified that this person could work as a psychiatric aide, a marker, a router, or a photocopy machine operator. Tr. 56–57. The ALJ then

modified the hypothetical to include light work, no more than occasional interaction with the public, and no fast-paced or high production quota work. Tr. 58. The vocational expert confirmed that this hypothetical person could still perform the jobs which would exist in the same numbers. Tr. 58.

The Commissioner argues that, based on this evidence, remand would serve no purpose because the record demonstrates that the outcome would be the same if Brown's residual functional capacity included his mental limitations. Doc. 16 at 12. Brown argues that this case is the same as *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020), and *Gilet v. Comm'r of Soc. Sec.*, No. 2:20-cv-457-NPM, 2022 WL 950639, at *5 (M.D. Fla. Mar. 30, 2022). Doc. 13 at 13–14.

In *Samuels*, the claimant suffered from bipolar disorder for which she received treatment for several years before the alleged disability onset. 959 F.3d at 1044. *Samuels* finds that the ALJ lacked substantial evidence for the claimant's residual functional capacity because the ALJ failed to accurately describe all the claimant's mental restrictions when questioning the vocational expert. *Id.* at 1046. The ALJ found that the claimant's bipolar disorder was severe but in posing the hypothetical "nowhere indicated that medical evidence suggested Ms. Samuel's ability to work was affected by that impairment." *Id.* at 1047. The hypothetical also failed to account for the episodic nature of Ms. Samuel's bipolar disorder. *Id.* In *Gilet*, the record contained no evidence that the ALJ incorporated the limits caused by the claimant's bipolar disorder into the residual functional capacity analysis. 2022 WL 950639, at *4–5. In fact, the ALJ nowhere mentioned the claimant's "bipolar disorder" in his

RFC analysis "or anywhere else in the decision" and failed to "specifically discuss the limiting effects" of that disorder. *Id.* Thus, *Gilet* remands the matter to the Commissioner. *Id.* at *5.

This case is not analogous to *Samuels* or *Gilet*. Here, substantial evidence supports the ALJ's analysis. The ALJ discussed Brown's depressive disorder and noted both its recent onset and its quick improvement with just one month of treatment. The ALJ incorporated the potential limiting effects of that condition in his second hypothetical to the vocational expert, who testified that those limits would not impact the jobs that Brown could perform or their availability in the national economy. Thus, as the Commissioner argues, the ALJ's failure to include those limits in his opinion is a harmless error. *See Mills v. Astrue*, 226 F. App'x 926, 931–32 (11th Cir. 2007) (citing *Diorio v. Heckler*, 721 F.3d 726, 728 (11th Cir. 1983) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.").

### b. Brown shows no prejudice requiring a remand based on the ALJ's failure to seek a consultative examination.

Brown argues that the ALJ's opinion lacks substantial evidence because the ALJ failed to "obtain" a medical opinion of the medical evidence "in order to determine [Brown's] mental limitations that result from the impairment." Doc. 13 at 17. The Commissioner responds that the record contains sufficient evidence to

support the ALJ's decision and that Brown otherwise fails to demonstrate prejudice. Doc. 16 at 14.

"Social Security proceedings are inquisitorial rather than adversarial," which means that the ALJ must "investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000); *see Rodriguez v. Soc. Sec. Admin.*, 118 F. 4th 1302, 1316 (11th Cir. 2024) (explaining the burden shifting framework in SSA determinations). Accordingly, if an ALJ lacks necessary information from the claimant's medical sources, the ALJ "may decide to purchase a consultative examination." 20 C.F.R. §§ 416.919a(a), 416.945(a)(3). Before purchasing a consultative examination, the ALJ considers existing medical reports, the claimant's disability interview, and other evidence of record. *Id.* A consultative examination may be necessary "to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [the] claim." 20 C.F.R. § 416.919a(b); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001).

However, although an ALJ "has a duty to develop the record where appropriate," the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Even if a consultative examination was necessary for an informed decision, remand requires a showing of prejudice. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). "In evaluating the necessity for a remand, the court is 'guided by

11

whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Martin v. Comm'r of Soc. Sec.*, No. 8:22-CV-1435-JSS, 2023 WL 3644419, at *3 (M.D. Fla. May 25, 2023) (quoting *Brown*, 44 F.3d at 935). This requires the claimant to identify facts that could have been developed that would have changed the outcome. *Id.*

Here, Brown demonstrates neither an insufficient record nor prejudice. As explained above, the medical evidence shows that Brown's mental health impairment first emerged with the June 28, 2023, depressive disorder diagnosis. Tr. 13, 16, 471. At his follow up appointments on July 5 and July 12, 2023, Brown reported substantial improvement with treatment. Tr. 462, 468. These records, together with Brown's history (including the absence of a prior mental health impairment), provide a sufficient basis for the ALJ's findings. The ALJ was not required to obtain a medical source opinion before formulating Brown's residual functional capacity. *See Martin*, 2023 WL 3644419 at *4–5. Thus, Brown's argument that the ALJ should have procured a physician opinion to formulate Brown's residual functional capacity is incorrect. "[T]he lack of a medical opinion does not equate to a lack of sufficient medical evidence on which the ALJ could rely to make an informed decision." *Id.* Even if insufficient, the record contains and Brown articulates no evidentiary gap resulting in unfairness or clear prejudice.

## V.     Conclusion

Accordingly, because substantial evidence supports the ALJ's decision, the decision is **AFFIRMED**. The Clerk is directed to enter a judgment in favor of the Commissioner and against Brown, to terminate any pending motion, and to close the case.

**ORDERED** in Tampa, Florida, on this 13th day of August, 2025.

_____
LINDSAY S. GRIFFIN
United States Magistrate Judge